UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kayla Cerretti, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>- against -<br><br>Whole Foods Market Group, Inc.,<br><br>       Defendant | 1:21-cv-05516<br><br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Whole Foods Market Group, Inc. ("defendant") manufactures, labels, markets, and sells "Organic Chocolate Ice Cream Bars," or more specifically, "Organic Vanilla Ice Cream Dipped in Organic Chocolate," depicted amidst chunks of chocolate, under its 365 brand ("Product").




2. The side panel describes the "Chocolate [Coated] Vanilla Ice Cream Bars."

Our Organic Ice Cream Bars are made the old fashioned way with the finest organic ingredients. We start with fresh cream and cane sugar, then dunk our rich ice cream in chocolate for a smooth, thick shell. Indulge in the pure decadence of our organic ice cream bars.

3. The representations are misleading because the Product has less chocolate than consumers expect.

**I.   DEFINITION OF CHOCOLATE**

4. Chocolate is defined by Merriam-Webster as a food "prepared from ground roasted cacao beans."

5. Dictionary.com defines chocolate as a "a preparation of the seeds of cacao, roasted, husked, and ground, often sweetened and flavored, as with vanilla."

6. The Cambridge Dictionary describes chocolate as "a sweet, usually brown, food made from cacao seeds, that is usually sold in a block."

7. Google Dictionary – based on its leading search engine that discovers the most

2

relevant and accurate information – defines chocolate as "a food preparation in the form of a paste or solid block made from roasted and ground cacao seeds, typically sweetened."

8. To make chocolate, cacao beans are "Fermented, roasted, [and] shelled," producing cacao nibs.

9. The nibs are ground to produce cocoa mass or chocolate liquor and then combined with dairy ingredients, sweeteners, and flavorings.

10. The Food and Drug Administration ("FDA"), and by extension, Illinois, adopted these dictionary definitions, and defines chocolate as made from cacao beans with a small amount of optional ingredients, including dairy (i.e., milk), sweeteners and flavorings. See 21 C.F.R. § 163.130(a); Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("[a] federal regulation automatically adopted pursuant to this [Federal Food, Drug & Cosmetic] Act takes effect in this State on the date it becomes effective as a Federal regulation.").

11. While a definition draws a sharp boundary around a term to provide meaning, words are also defined by what they exclude.

12. In the context of chocolate, all definitions universally exclude fats from sources other than cacao ingredients, namely, vegetable fats (oils).[1]

13. Federal and state regulations require that where a food has some chocolate but is mainly vegetable oils, this should be disclosed to consumers. 21 C.F.R. § 163.155(c).

14. Federal and identical state regulations require a product's front label to contain a common or usual name which accurately identifies or describes, "in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a).

---

[1] Vegetable oils are referred to as vegetable fats because they may be solid at room temperature.

3

15. Defendant's representations violate 21 U.S.C. § 343(a)(1) and 410 ILCS 620/11, which deem a food misbranded when the label contains a statement that is "false or misleading."

16. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, provides protection for consumers purchasing products like Defendant's Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

17. Whether the coating of an ice cream bar is made only from chocolate ingredients or contains more vegetable oils than any chocolate ingredients, is basic front label information consumers rely on when making quick decisions at the grocery store.

## II. CONSUMERS EXPECT CHOCOLATE TO BE MADE FROM CACAO BEANS

18. Historians of chocolate note that "Mixing unnatural ingredients with chocolate – with the intent of extending the quantity of raw product and defrauding customers – has a long history."[2]

19. The main adulterants and extenders are typically starches and vegetable fats.

20. In 2007, the largest confectionery companies sought to re-define chocolate, by replacing cacao ingredients with "cocoa butter equivalents" ("CBE"), or vegetable fats.

21. Over thirty-thousand Americans submitted critical comments, crashing the FDA's website.

22. In an interview on National Public Radio ("NPR"), Cybele May, proprietor of candy review website, was asked, "if it's labeled chocolate, [does] it has to have cocoa butter in it?"[3]

---

[2] L.P. Brindle and B.F. Olsen, Adulteration – The Dark World of 'Dirty' Chocolate, in Chocolate (eds. L.E. Grivetti and H.Y. Shapiro) (2009).
[3] Rebecca Roberts, An Argument Against 'Healthy' Chocolate, Talk of the Nation, Apr. 24, 2007, NPR; candyblog.net.

23. May replied, "Absolutely, and it cannot contain other vegetable oils. It has to be completely from the cocoa bean."

24. The Los Angeles Times interviewed consumers about this proposal, with one stating, "The idea of substituting vegetable oil for cocoa butter, a natural component of the cocoa bean that is the traditional source of chocolate," "would [make her] feel like [she] was being duped."[4]

25. One chocolatier commented, "This is all a question of money. If they can take something and dilute it, and still get the taste [for] a fraction of the cost, that's what they want. *But the taste is not the same, he and others said*." (emphasis added)

26. San Francisco-based Gary Guittard of Guittard Chocolate Co., described "this [episode] as a battle for the soul of the popular confection."

27. Fran Bigelow, of Fran's Chocolates in Seattle, was asked if she would "ever use vegetable fats and oils instead of cocoa butter in [her] chocolate?," and responded, "No, no, no…we just are fighting to protect the integrity of chocolate," by "educat[ing] consumers."

28. The proposal was defeated, in part due to chocolate colossus and industry leader, Mars Wrigley, which stated:

> At Mars, the consumer is our boss, and American consumers are passionate about chocolate. They don't want anyone to change the chocolate they've enjoyed for generations…As a privately held company, we have the freedom to invest in the highest quality chocolate and deliver what consumers want.

29. Consumer surveys, including one of over four hundred Americans, reached the same conclusions.

30. Roughly sixty percent of respondents who observe a product described as coated, or dipped, in chocolate, with pictures of chocolate ingredients, expect they will not be provided lower

---

[4] Jerry Hirsch, The Courage of their Confections, Apr. 14, 2007, Los Angeles Times.

quality chocolate substitutes.

### III. REASONS WHY CONSUMERS WANT CHOCOLATE FROM CACAO BEANS

31. For several reasons, consumers are misled when a food represented as containing chocolate replaces cacao beans with vegetable oils.

32. First, cacao ingredients are several times more expensive than vegetable oils.

33. Though cocoa butter makes up one-fourth of chocolate, it costs more than three times as much as vegetable oil.

34. Bigelow stated, "there's no benefit to the consumer [to eliminate cacao ingredients], but there's a benefit to the manufacturers that are using those vegetable oils or the lower-cost ingredients."

35. Second, cacao ingredients provide greater satiety than vegetable oils – they are more filling, instead of leaving the consumer feeling like they did not eat anything or ate less, even though their caloric contents are roughly similar.

36. The result is greater consumption of empty calories.

37. Third, the creamy and smooth taste of chocolate is eliminated when vegetable oils are added in place of the cocoa butter from chocolate from cacao beans.

38. The substitution of vegetable oils – in amounts as low as five percent – contribute to a waxy and oily mouthfeel and leave an aftertaste.

39. Cocoa butter, according to Jay King, the president of the Retail Confectioners International, "is the essence of the taste, texture and 'mouth feel'" of chocolate.

40. Though proponents of the plan to add vegetable oils to chocolate claimed consumers "won't notice if they change it," Jean Hammond of Kilwin's Ice Cream Shops, disagreed:

> Just that little bit of vegetable oil changes the mouthfeel. It makes it taste waxy. You would just be stunned at the difference in taste. They're just not comparable We take chocolate just very, very seriously. Chocolate-ish is not good enough.

41. Fourth, chocolate has health and nutrition benefits that vegetable oils lack.

42. Numerous studies have indicated that flavonoids in cacao beans positively affect the heart and arteries against harmful free radicals.

43. Vegetable oils raise cholesterol, contain artery-clogging trans-fats and saturated fats, and are linked to higher rates of heart disease.

44. Cocoa butter contains relatively heart-healthy, unsaturated fats, which does not cause elevated cholesterol or greater risks of heart disease.

45. Fifth, chocolate is a natural ingredient, while vegetable oils are made through synthetic means.

46. Consumers across all demographics increasingly prefer foods that are natural and avoid highly processed synthetic ingredients made with additives.

47. Chocolate is made through fermentation, roasting, and grinding of cacao beans.

48. In contrast, vegetable oils are highly refined and bleached, subjected to hydrogenation and interesterification, with chemical catalysts, such as nickel and cadmium.

IV. **THE PRODUCT'S "CHOCOLATE" CONTAINS INGREDIENTS INCONSISTENT WITH CHOCOLATE**

49. The representations include describing the ice cream bar as coated in "Chocolate" and "Dipped in Organic Chocolate," next to a chocolate coated bar, alongside numerous chunks of chocolate.

50. The side panel describes the Product as being "made the old fashioned way with the finest organic ingredients," "dunk[ing] our rich ice cream in chocolate for a smooth, thick shell,"

and consumers are told to "Indulge in the pure decadence of our organic ice cream bars."

51. "Smooth" and "decadence" are words commonly used to describe chocolate.

52. These representations are misleading, because the "chocolate" contains more chocolate substitutes than cacao ingredients, shown on the ingredient list.

**INGREDIENTS: ORGANIC ICE CREAM:** PASTEURIZED ORGANIC MILK, PASTEURIZED ORGANIC CREAM, ORGANIC CANE SUGAR, ORGANIC SUGARED EGG YOLKS (ORGANIC EGG YOLKS, ORGANIC CANE SUGAR), ORGANIC VANILLA EXTRACT, ORGANIC LOCUST BEAN GUM, ORGANIC GUAR GUM. **ORGANIC CHOCOLATE:** ORGANIC CANE SUGAR, ==ORGANIC EXPELLER PRESSED PALM KERNEL OIL==, ==ORGANIC CHOCOLATE LIQUOR==, ==ORGANIC COCOA BUTTER==, ORGANIC WHOLE MILK POWDER, ORGANIC SOY LECITHIN (EMULSIFIER), ORGANIC VANILLA EXTRACT.

53. The relative amounts of the ingredients in the "Organic Chocolate" are listed based on their order of predominance by weight, which shows that the second ingredient, "Organic Expeller Pressed Palm Kernel Oil," precedes the third and fourth ingredients of "Organic

8

Chocolate Liquor, [and] Organic Cocoa Butter." *See* 21 C.F.R. § 101.4(a)(1).

54. What is described on the front and side label as "CHOCOLATE" is actually "MILK CHOCOLATE AND VEGETABLE OIL COATING."

55. The amount of vegetable oil exceeds that of the chocolate liquor and cocoa butter.

56. Based on industry specifications for this type of "compound coating," coupled with evaluation of the saturated fat and cholesterol content listed on the Nutrition Facts, the amount of vegetable oil in the Product appears to exceed the combined total of chocolate liquor and cocoa butter.

57. The substitution of palm kernel oil for cacao bean ingredients reduces costs.

58. However, this cost-saving is not passed on to consumers, who are sold a product represented to contain "chocolate," described as "smooth," and "indulgent," and accordingly charged a premium price.

59. The pictures of chocolate chunk ingredients tells consumers the "chocolate" component of the Product will (1) only contain chocolate, (2) not contain the ingredients excluded from chocolate, and (3) certainly not contain *more* chocolate substitute ingredients than the chocolate ingredients.

60. Consumers expect that companies – especially larger and respected businesses, like Whole Foods, to tell them the truth, not half-truths.

61. Consumers of a premium ice cream bar, under the Organic 365 brand, will not be so distrustful to scrutinize the fine print of the ingredient list to confirm the front label is accurate.

62. As Gary Guittard stated, nothing prevents a company from making a product without actual chocolate or with vegetable oils, but it "has to be labeled 'chocolate flavored' (for it still has the cocoa in it) rather than 'chocolate.' That gives the consumer a signal that something less than

chocolate lies beneath the wrapping."

63. While the Product's ingredient list may give that "signal," consumers expect – and the law requires it – to be disclosed prominently on the front of the label, as "milk chocolate and vegetable oil coating." 21 C.F.R. § 163.155(c).

64. Even chocolate aficionados such as Cybele May indicated that expectations for chocolate are so well-established that she "do[es]n't want to have to flip over the chocolate bar to read the ingredients to know what I'm getting. I want to know on the front that it is chocolate with cocoa butter."

65. Ice cream bars coated in chocolate without vegetable oils are not a rare or pricy delicacy that would make a reasonable consumer "double check" the relative amount of the cacao bean and vegetable oil ingredients by scouring the packaging.

66. These products exist in the marketplace and are not technologically or otherwise unfeasible to produce, as made by the Magnum Ice Cream Company.

67. Moreover, even if some "chocolate" covered ice cream bars have a drop of vegetable oils, Defendant's Product has *more* vegetable oil than chocolate liquor and cocoa butter.

68. Competitor ice cream bars typically, and truthfully describe their coating as "chocolatey," "chocolate flavored," or as a "milk chocolate and vegetable oil coating."

69. These statements put consumers on notice that the coating is something less than authentic chocolate.

70. Consumers seeing Defendant's Product, which exclusively promotes its chocolate coating, and fails to disclose the greater amount of vegetable oils, and the more "restrained" or truthful labeling of competitors, will purchase Defendant's Product, believing it is higher quality than it is.

## V. CONCLUSION

71. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

72. By labeling the Product in this manner, Defendant gained an advantage against other companies, and against consumers seeking to purchase a product with more of the named ingredient, chocolate, than it contained.

73. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

74. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

75. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

76. The Product is sold for a price premium compared to other similar products, no less than approximately $5.39 for three bars (9 FL OZ or 267 mL), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

77. Similar products which have an equivalent amount and/or proportion of chocolate and chocolate substitutes are sold for a lower price of $3.49 for three bars (9 FL OZ or 267 mL).

### Jurisdiction and Venue

78. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

79. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

80. Plaintiff Kayla Cerretti is a citizen of Illinois.

81. Defendant Whole Foods Market Group, Inc. is a Delaware corporation with a principal place of business in Austin, Travis County, Texas.

82. Plaintiff and defendant are citizens of different states.

83. Defendant transacts business within this district, through the marketing, supply, and sales of its products at numerous physical stores which it operates within this district.

84. Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

85. Venue is in the Eastern Division of this District because a substantial part of the events or omissions giving rise to the claim occurred in Lake County, i.e., Plaintiff's purchase of the Product and her awareness of the issues described here.

Parties

86. Plaintiff Kayla Cerretti is a citizen of Round Lake, Lake County, Illinois.

87. Plaintiff likes chocolate for the same reason most Americans do, and why so many citizens spoke up when the largest confectionary companies tried to re-define this food.

88. Defendant Whole Foods Market Group, Inc., is a Delaware corporation with a principal place of business in Austin, Texas, Travis County.

89. Whole Foods operates over five hundred stores in the United States.

90. Whole Foods is known for its organic and high-quality grocery products.

91. Whole Foods is self-described as "more than just a grocery store, [because] [they] seek out the finest natural and organic foods available [and] maintain the strictest quality standards."[5]

92. Whole Foods promises its customers that it "Sell[s] the Highest Quality Natural and

---

[5] Website Text Preview, Google search of whole foods,
https://www.amazon.com/alm/storefront/ref=grocery_wholefoods?almBrandId=VUZHIFdob2xlIEZvb2Rz

Organic Foods."

93. Whole Foods tells customers that it:

> [C]arefully vet[s] our products to make sure they meet our high standards by researching ingredients, reading labels and auditing sourcing practices – all to make shopping easier for you. Remember, if it doesn't meet our standards, we don't sell it.

94. These facts show a retailer with a significant amount of trust and equity when it comes to consumer purchasing.

95. Whole Foods manufactures or contracts to manufacture, private label products under its "365" brand.

96. The quality of products under the 365 brand is considered equal to, or greater than, similar products sold by national brands.

97. Whole Foods also sells its products through the internet, via its own website, and via the website of corporate parent, Amazon.com, Inc. ("Amazon").

98. The Product is available at all of Defendant's stores and from its online platforms.

99. The Product is purported to be distributed by Whole Foods Market, which is headquartered in Austin, Texas.



100. Defendant is the entity responsible for the Product's labeling and approves and authorizes all products bearing the 365 brand.

101. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, from defendant's stores including the location at 851 N Milwaukee Ave, Vernon Hills, IL 60061, between July and August 2021, among other times.

102. Plaintiff bought the Product because she expected it contained chocolate and not chocolate substitutes, and did not contain more chocolate substitutes than chocolate because that is what the front label said.

103. Plaintiff relied on the words, "Organic Chocolate Ice Cream Bars," "Organic Vanilla Ice Cream Dipped in Organic Chocolate," depicted amidst chunks of chocolate, and the description, stating:

> Our Organic Ice Cream Bars are made the old fashioned way with the finest organic ingredients. We start with fresh cream and cane sugar, then dunk our rich ice cream in chocolate for a smooth, thick shell. Indulge in the pure decadence of our organic ice cream bars.

104. Plaintiff bought the Product at or exceeding the above-referenced price.

105. Plaintiff expected the Product's coating was exclusively chocolate, and if it had any chocolate substitutes, these were present in a *de minimis* or negligible amount, instead of exceeding the amount of chocolate liquor and cocoa butter.

106. Plaintiff would not have purchased the Product if she knew the representations were false and misleading or would have paid less for it.

107. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

108. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

109. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so

with the assurance that Product's representations are consistent with its composition.

110. Plaintiff is unable to rely on the labeling of this, and other Whole Foods 365 brand products, which means she buys fewer Whole Foods 365 brand items than before being aware of this issue, which causes her to spend more money on buying more expensive brands.

111. Plaintiff wants to resume purchasing Whole Foods 365 brand products in the same amount as she previously did.

## Class Allegations

112. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of North Dakota, Kansas, Michigan, West Virginia, Wyoming, Minnesota, Rhode Island, and Delaware, who purchased the Product during the statutes of limitations for each cause of action alleged

113. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

114. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

115. Plaintiff is an adequate representative because her interests do not conflict with other members.

116. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

117. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

118. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

119. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

120. Plaintiff incorporates by reference all preceding paragraphs.

121. Plaintiff and class members desired to purchase a product that contained chocolate and not chocolate substitutes, and did not contain more chocolate substitutes than chocolate.

122. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

123. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

124. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

125. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

126. Plaintiff relied on the representations and omissions that the Product's coating was exclusively chocolate, and that if it contained any chocolate substitutes, this amount would be *de minimis* or negligible instead of exceeding the chocolate ingredients.

127. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

128. The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained chocolate and not chocolate substitutes, and did not contain more chocolate substitutes than chocolate.

129. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

130. This duty is based on Defendant's outsized role in the market as a trusted brand, as described above, which means consumers expect it to be different than other companies that are solely motivated by their bottom line.

131. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

132. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

133. The Product did not conform to its affirmations of fact and promises due to defendant's actions and was not merchantable because it was not fit to pass in the trade as advertised.

134. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

135. Defendant had a duty to truthfully represent the Product, which it breached.

136. This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area, as a company which "vets" all its Products for quality and honest labeling.

137. Defendant is a purveyor of natural foods, and though chocolate is natural, the use of vegetable oils is not, because these ingredients are subject to hydrogenation and interesterification, in the presence of chemical catalysts such as nickel and cadmium.

138. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, the leading specialty grocery store in the nation.

139. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

140. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

141. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained chocolate and not chocolate substitutes, and did not contain more chocolate substitutes than chocolate.

142. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provide it with actual and/or constructive knowledge of the falsity of the representations.

143. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

144. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   October 17, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com