UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAYLA CERRETTI, | |
| Plaintiff, | No. 21 CV 5516 |
| v. | Judge Manish S. Shah |
| WHOLE FOODS MARKET GROUP, INC., | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Defendant Whole Foods Market Group, Inc. manufactures and markets organic chocolate ice cream bars. Plaintiff Kayla Cerretti bought some of those bars, expecting the coating on the ice cream to be exclusively chocolate. Cerretti alleges that Whole Foods deceived her because the chocolate coating contained more non-chocolate ingredients than actual chocolate. Cerretti wants to represent a class of consumers and brings claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, breach of express and implied warranties, negligent misrepresentation, fraud, and unjust enrichment. Whole Foods moves to dismiss under Rule 12(b)(6). For the reasons discussed below, the motion is granted.

I.     **Legal Standards**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018) (citing *Deppe v. NCAA*, 893 F.3d 498, 499 (7th Cir. 2018)).

## II. Background

Whole Foods sold "Organic Chocolate Ice Cream Bars" under its 365 brand. [1] ¶ 1.[1] The front of the product's packaging described the bars as "Organic Vanilla Ice Cream Dipped in Organic Chocolate," and showed the dessert surrounded by chunks of chocolate:



---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the complaint. [1].

2

*Id.* A side panel on the box said that "Our Organic Ice Cream Bars are made the old-fashioned way with the finest organic ingredients. We start with fresh cream and cane sugar, then dunk our rich ice cream in chocolate for a smooth, thick shell. Indulge in the pure decadence of our organic ice cream bars." *Id.* ¶ 2. Whole Foods was known for organic and high-quality grocery products, and the company said that it sought out the "finest natural and organic foods" and maintained "the strictest quality standards." *Id.* ¶¶ 90–93.

Kayla Cerretti bought Whole Foods ice cream bars, expecting that the coating on the ice cream would only be chocolate. [1] ¶¶ 100–05, 126. Cerretti believed that if the ice cream's coating included any chocolate substitutes, they would not exceed the amount of actual chocolate ingredients like chocolate liquor and cocoa butter. *Id.* ¶¶ 105, 126. According to the product's ingredients list, however, the chocolate in Whole Foods's ice cream bars was more palm kernel oil than it was organic chocolate liquor or organic cocoa butter by weight, although it did include those ingredients. *Id.* ¶¶ 52–53. Relying on Whole Foods's representations, Cerretti paid more for Whole Foods's ice cream bars than she would have if she had known what was really in the chocolate. *Id.* ¶¶ 75, 106–08. The ice cream bars were worth less than they appeared and Whole Foods knew that its product wasn't consistent with the company's advertising. *Id.* ¶¶ 73–77, 108, 143.

Dictionaries define chocolate as a food prepared from cacao beans, often combined with other ingredients, including sweeteners. *See* [1] ¶¶ 4–9. The Food and Drug Administration defines "milk chocolate" as a food made by "mixing and grinding

3

chocolate liquor with one or more ... optional dairy ingredients," along with optional sweeteners or other ingredients. *Id.* ¶ 10; 21 C.F.R. § 163.130(a). All definitions of chocolate exclude fats from sources other than cacao ingredients. [1] ¶ 12. Cacao ingredients, which are natural rather than synthetic, cost more and are more filling than vegetable oils. [1] ¶¶ 32–35, 45–48. Replacing cocoa butter in chocolate with vegetable oils degrades the flavor, creating a "waxy and oily mouthfeel" and an aftertaste as opposed to the "creamy and smooth" taste of chocolate. *Id.* ¶¶ 37–39.

The adulteration of chocolate—by including starches and vegetable fats—has a long history. [1] ¶¶ 18–19. When large confectionary companies sought to redefine chocolate by replacing cacao ingredients, thousands of Americans responded critically, and industry figures spoke out against the redefinition. *Id.* ¶¶ 20–28. In a consumer survey of 400 Americans who saw a product described as coated or dipped in chocolate pictured with chocolate ingredients, sixty percent of respondents expected that they would not be provided lower-quality chocolate substitutes. *Id.* ¶¶ 29–30.

### III.   Analysis

#### A.   Statutory and Common-Law Fraud

The Illinois Consumer Fraud Act prohibits "unfair or deceptive acts or practices ... in the conduct of any trade or commerce." 815 ILCS 505/2.[2] Deceptive or

---

[2] The court has subject-matter jurisdiction under the Class Action Fairness Act because plaintiff is a citizen of Illinois, Whole Foods (a corporation) is a citizen of Delaware and Texas, the amount in controversy exceeds $5 million, and plaintiff seeks to represent a class in excess of 100 members. [1] ¶¶ 79–81, 112; 28 U.S.C. § 1332(d). Federal courts sitting in diversity apply the substantive law of the forum state, so Illinois law applies. *See Piltch v.*

4

unfair practices include any "misrepresentation or the concealment, suppression or omission of any material fact." *Id*. To state a claim under the Act, Cerretti must show "that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934–35 (7th Cir. 2010)). The elements of a common-law fraudulent misrepresentation claim largely overlap with a deceptive-practices claim under the ICFA,[3] and include "a false statement of material fact." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018) (quoting *Doe v. Dilling*, 228 Ill.2d 324, 342–43 (2008)). Cerretti must plead both her deceptive-practices statutory and common-law fraud claims with the detail required by Rule 9(b), including the "who, what, when, where, and how" of the fraud. *Vanzant*, 934 F.3d at 736 (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)); *Newman*, 885 F.3d at 998.

At issue here is the element of a deceptive act or misrepresentation. *See* [11-1] at 9–13.[4] Whole Foods called its product "Organic Chocolate Ice Cream Bars,"

---

*Ford Motor Co.*, 778 F.3d 628, 631–32 (7th Cir. 2015) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

[3] Cerretti does not argue that Whole Foods's marketing was an unfair practice, just that it was deceptive. *See* [15] at 9–19.

[4] By claiming that Whole Foods's knew its products were misrepresented, [1] ¶ 143, and otherwise detailing the circumstances of the alleged fraud, Cerretti adequately alleged the intent element for her common-law fraud claim. *See Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018) (quoting *Doe v. Dilling*, 228 Ill.2d 324, 342–43 (2008)). Under Rule 9, intent can be alleged generally, and can be inferred from circumstances. Fed. R. Civ. P. 9; *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012).

described the bars as "Organic Vanilla Ice Cream Dipped in Organic Chocolate," decadent, and smooth, and the bars were pictured amidst chunks of chocolate. *See* [1] ¶¶ 1–2, 49–51. Cerretti claims that these representations were misleading because (1) the coating on the ice cream "has less chocolate than consumers expect," (2) the chocolate "contains more chocolate substitutes than cacao ingredients," and (3) the coating wasn't only chocolate. *See id.* ¶¶ 3, 52, 59.

To show that Whole Foods misrepresented its product, Cerretti needs to allege that the product packaging was "likely to deceive reasonable consumers," and that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020) (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972–73 (7th Cir. 2020)). Where a plaintiff alleges "unreasonable or fanciful interpretations" of labels or advertising, dismissal on the pleadings can be justified. *Id.* at 477 (collecting cases). The context of the entire packaging of the ice cream bars along with "all the information available to consumers and the context in which that information is provided and used" is relevant, but an accurate list of ingredients does not necessarily mean that a front label isn't deceptive. *Id.* at 476–78 (citing *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005)).

Cerretti was misled by Whole Foods's packaging, but her interpretation of the labeling on the ice cream bars was unreasonable. Whole Foods called its product "chocolate" and showed the dessert amidst chunks of chocolate. [1] ¶¶ 1–2. As plaintiff acknowledged, the product actually contained chocolate. *See id.* ¶¶ 52–56.

Whole Foods never advertised its product as exclusively or 100% chocolate. *See id.* ¶¶ 1–2. Defendant called the bars smooth and decadent, *id.* ¶¶ 2, 50–51, but those representations were about the product's qualities, not its ingredients. The product contained an accurate ingredients list. *See id.* ¶ 52.[5] With that context, Whole Foods's packaging wasn't likely to deceive a significant portion of reasonable consumers. *See Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505, at *4 (N.D. Ill. Mar. 1, 2022) (the word strawberry, a picture of a half a strawberry, and a pastry oozing red filling weren't false representations that a product's filling contained a certain number of strawberries); *Mitchell v. Whole Foods Mkt. Grp., Inc.*, 20 Civ. 8496 (ER), 2022 WL 657044, at *2–8 n.14 (S.D.N.Y. Mar. 4, 2022) (dismissing consumer fraud claims based on allegations about the presence of vegetable oils in products advertised as "chocolate"); *Bell*, 982 F.3d at 478 (citing *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("'Made with Real Vegetables' label on box of crackers could not reasonably mean crackers were composed of primarily fresh vegetables.")).

Cerretti wants to ground her interpretation of Whole Foods's representations on dictionary definitions, consumer preferences, survey results, and federal regulations. *See* [15] at 9–19. None of plaintiffs' allegations shows that Whole Foods was lying, however. Definitions of chocolate universally exclude fats from sources

---

[5] While an accurate ingredients list doesn't immunize Whole Foods from claims that the rest of its packaging was deceptive, the ingredients list is relevant as a piece of information available to consumers. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–77 (7th Cir. 2020) (citations omitted).

other than cacao ingredients, [1] ¶¶ 4–7, 10–12, but plaintiff hasn't alleged that consumers were aware of those definitions or would expect a chocolate coating on ice cream to conform precisely to those definitions.[6] That consumers reacted negatively to a proposed regulatory redefinition of chocolate, *see id.* ¶¶ 20–28, doesn't show that chocolate buyers understand all products labelled with the word "chocolate" to be made only (or mostly) from cacao ingredients. There's an allegation that putting vegetable oils into chocolate creates unpleasant mouthfeel and an aftertaste, *id.* ¶ 38, but Cerretti doesn't allege that Whole Foods's ice cream bars had those problems or that the packaging deceptively represented the actual mouthfeel or taste.

Plaintiff's survey results don't support her theory of misrepresentation, either. Sixty percent of respondents in a 400-person survey expected that "they [would] not be provided lower quality chocolate substitutes" when viewing a product that was coated or dipped in chocolate alongside pictures of chocolate ingredients. [1] ¶¶ 29–30. Whole Foods's ice cream bars included chocolate, *see id.* ¶¶ 52–54, and the complaint doesn't allege that survey respondents expected that the dipped or coated products at issue would *only* contain cacao ingredients, or what "lower quality chocolate substitutes" meant. *See id.* ¶ 30; *see also Puri v. Costco Wholesale Corp.*, Case No. 5:21-cv-01202-EJD, 2021 WL 60000078, at *7 (N.D. Cal. Dec. 20, 2021) (discussing a similar survey); *c.f. Bell v. Publix Super Markets, Inc.*, 982 F.3d 468,

---

[6] The definitions of chocolate in the complaint do not specify that chocolate is only or primarily made from cacao ingredients. *See* [1] ¶¶ 4–7, 10; *see also Mitchell v. Whole Foods Mkt. Grp., Inc.*, 20 Civ. 8496 (ER), 2022 WL 657044, at *8 n.14 (S.D.N.Y. Mar. 4, 2022) (citing *Puri v. Costco Wholesale Corp.*, Case No. 5:21-cv-01202-EJD, 2021 WL 60000078, at *6 (N.D. Cal. Dec. 20, 2021)) (finding similar definitions "inapposite, because they do not require that a food be made exclusively or primarily from cacao bean ingredients to be called 'chocolate'").

8

480–83 (7th Cir. 2020) (survey results showing that consumers understood the precise representation at issue—"100% Grated Parmesan Cheese"—meant that a product contained only cheese, combined with other allegations, were sufficient to plead that a significant portion of consumers read an advertisement that way).

Cerretti doesn't want to enforce federal regulations against Whole Foods, but argues that those regulations support a finding of misrepresentation. *See* [15] at 15–19.[7] Because Whole Foods used the word "chocolate," Cerretti argues, reasonable consumers were likely to rely on the Food and Drug Administration's definition of milk chocolate, which doesn't include vegetable oils. *See id.* at 18 (citing 21 C.F.R. § 163.130(a)); [1] ¶ 10. Even if Cerretti is right about the correct FDA definition for defendant's product,[8] however, "average consumers are not likely to be aware of the nuances of the FDA's regulations" of a particular food. *Bell*, 982 F.3d at 482. In other words, that the FDA's definition of milk chocolate excluded vegetable oils doesn't make it reasonable to interpret Whole Foods's packaging to mean that the chocolate coating on the ice cream bars was made up of only (or mostly) cacao ingredients.[9]

---

[7] Cerretti couldn't enforce the FDA's regulations if she wanted to. *See* 21 U.S.C. § 337(a); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) (citing *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) and 21 U.S.C. § 343-1)) (noting that the Federal Food, Drug, and Cosmetic Act does not create a private right of action but allows plaintiffs to seek relief pursuant to state-law causes of action, so far as those claims are not preempted by the FDCA's express preemption clause).

[8] Whole Foods argues that the FDA's definition of milk chocolate didn't apply to its product, which was actually an ice cream bar, not milk chocolate. [11-1] at 15. The parties also dispute whether chocolate is a food or a flavor. *See* [15] at 13; [11-1] at 11–13. While it's reasonable to infer that plaintiff is right and chocolate is a food, that doesn't change the analysis, which centers on Whole Foods's representations and consumer understanding of those representations. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020).

[9] I ignore Whole Foods's untimely arguments for dismissal based on preemption. *See* [11-1] at 16–17. Preemption is an affirmative defense appropriately addressed through a Rule 12(c)

Whole Foods called its ice cream bars chocolate, and the bars included chocolate. [1] ¶¶ 1–2, 52–54. Defendant didn't say anything about the proportion of cacao ingredients to other ingredients in the chocolate coating on the ice cream bars, and Cerretti hasn't shown that a significant portion of reasonable consumers would read the word "chocolate" (or the other representations on the product's packaging) the way she did.

The claims for violation of the ICFA and fraudulent misrepresentation are dismissed.

### B. Breach of Warranties

Cerretti brings claims for breach of implied and express warranties under Illinois law and under the Magnuson–Moss Warranty Act. [1] ¶¶ 128–134. Under Illinois law, a buyer who discovers a breach of warranty must notify the seller "or be barred from any remedy." 810 ILCS 5/2-607(3)(a). Buyers are required to give pre-suit notice to encourage settlement and allow sellers to cure defects and minimize damages. *See Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 495 (1996); U.C.C. § 2–607 cmt. 4; *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill.App.3d 935, 939 (3d Dist. 1998) (citations omitted). If plaintiff's notice is insufficient under Illinois law, it also fails under federal law, because the Magnuson–Moss Warranty Act incorporates state-law notice requirements. *See Perona v. Volkswagen of Am., Inc.*, 292 Ill.App.3d 59, 65 (1st Dist. 1997) (citing *Walsh v. Ford Motor Co.*, 807 F.2d

---

motion for judgment on the pleadings. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 561–62 (7th Cir. 2010) (citations omitted).

1000, 1012 (D.C. Cir. 1986)); *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F.Supp.3d 772, 799 (N.D. Ill. 2016) (citations omitted).

The sufficiency of notice is generally a question of fact. *See Datil v. C.R. Bard, Inc.*, No. 19 C 8274, 2020 WL 5810402, at \*6 (N.D. Ill. Sept. 30, 2020) (citing *Malawy v. Richards Mfg. Co.*, 150 Ill.App.3d 549, 561 (5th Dist. 1986)); *Halo Branded Sols., Inc. v. RTB W., Inc.*, Case No: 15 C 50152, 2016 WL 1161340, at \*4 (N.D. Ill. Mar. 24, 2016) (quoting *Maldonado*, 296 Ill.App.3d at 940). But a court may decide whether notice was sufficient as a matter of law when the only inference to be drawn is that notice was unreasonable. *Datil*, 2020 WL 5810402, at \*6 (quoting *Maldonado*, 296 Ill.App.3d at 940); *Baldwin v. Star Scientific, Inc.*, No. 14 C 588, 2016 WL 397290, at \*10 (N.D. Ill. Feb. 2, 2016) (quoting *Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F.Supp.2d 933, 941 (N.D. Ill. 2013)).

Cerretti argues that she notified Whole Foods of the problems with their product by filing this lawsuit. [15] at 19. But when there's no allegation that a consumer suffered a personal injury because of a product's defect, filing a complaint against a seller isn't adequate notice under Illinois law. *See Connick*, 174 Ill.2d at 495 ("Only a consumer plaintiff who suffers a personal injury may satisfy the section 2–607 notice requirement by filing a complaint stating a breach of warranty action against the seller."); *Maldonado*, 296 Ill.App.3d at 940 (citation omitted).[10]

---

[10] Plaintiff relies on *Bridgestone/Firestone*, but that court's interpretation of § 2–607(3)(a) of the Uniform Commercial Code isn't controlling. *See In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F.Supp.2d 1069, 1110 (S.D. Ind. 2001) (finding that filing a lawsuit can constitute adequate notice of a breach in some circumstances). Plaintiff filed suit in an Illinois federal court, which means that Illinois's notice requirements apply. *See Piltch v.*

11

Alternatively, Cerretti contends that she didn't need to give notice to defendant because Whole Foods had actual knowledge of the alleged defect. [15] at 19. If a manufacturer is aware of the "trouble with the particular product purchased by a particular buyer," that actual knowledge satisfies Illinois's notice requirement. *Connick*, 174 Ill.2d at 493–94 (citing *Malawy v. Richards Mfg. Co.*, 150 Ill.App.3d 549 (5th Dist. 1986)). This exception to the notice requirement centers on manufacturer knowledge of a plaintiff's *claim*, rather than the facts of the alleged breach. *Connick*, 174 Ill.2d at 493–494 (quoting *American Mfg. Co. v. United States Chipping Board Emergency Fleet Corp.*, 7 F.2d 565, 566 (2d Cir. 1925)); *see O'Connor v. Ford Motor Co.*, 477 F.Supp.3d 705, 715–16 (N.D. Ill. 2020); *Anthony v. Country Life Mfg., LLC.*, 70 Fed. App'x 379, 384 (7th Cir. 2003).

There's an allegation in the complaint that "defendant received notice and should have been aware of [the issues with its products] due to complaints by regulators, competitors, and consumers." [1] ¶ 132. But those complaints (made by people other than Cerretti) at best put Whole Foods on notice of problems with the product line, and didn't alert the company to plaintiff's claim. That's not the kind of knowledge that can excuse pre-suit notice under Illinois law. *See Connick*, 174 Ill.2d at 493–94; *O'Connor*, 477 F.Supp.3d at 715–17. Whole Foods didn't admit that the company knew its products were defective and disputes that it made any false statements about the ice cream bars; it has not conceded that it had knowledge of

---

*Ford Motor Co.*, 778 F.3d 628, 631–32 (7th Cir. 2015) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 494–95 (1996).

12

Cerretti's claim. [11-1] at 9–17; *c.f. Abramov v. Home Depot, Inc.*, Case No. 17-cv-1860, 2018 WL 1252105, at *4 (N.D. Ill. Mar. 12, 2018) (the exception to the notice requirement applied when a defendant admitted "knowledge of the alleged defect" during the course of litigation).

The warranty claims are dismissed for lack of notice.[11]

### C. Negligent Misrepresentation

To state a claim for negligent misrepresentation, a plaintiff must allege that (1) the defendant had a duty to the plaintiff to communicate accurate information; (2) the defendant made a false statement of material fact to the plaintiff; (3) the defendant negligently failed to ascertain the truth of that statement; (4) the defendant made the statement intending to induce the plaintiff to act; (5) the plaintiff acted in reliance on the truth of that statement; and (6) the plaintiff suffered damage due to that reliance. *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326, 334–35 (2006) (citations omitted); *Kemper/Prime Indus. Partners v. Montgomery Watson Americas, Inc.*, 487 F.3d 1061, 1064 (7th Cir. 2007) (quoting *Bd. of Educ. v. A, C & S, Inc.*, 131 Ill.2d 428 (1989)).

---

[11] To state a claim for breach of the implied warranty of merchantability, Cerretti needs to allege "(1) a sale of goods (2) by a merchant of those goods, and (3) the goods were not of merchantable quality." *Brandt v. Boston Sci. Corp.*, 204 Ill.2d 640, 645 (2003); 810 ILCS 5/2-314. To be merchantable, the goods must be fit for the ordinary purposes for which such goods are used. 810 ILCS 5/2-314(2)(c); *see Baldwin v. Star Sci., Inc.*, 78 F.Supp.3d 724, 741–42 (N.D. Ill. 2015). While Cerretti alleges that Whole Foods's ice cream bars were defective because they included chocolate substitutes, *see* [1] ¶¶ 3, 52, she hasn't alleged any ordinary purposes for the bars, her own purpose for the product, or how defendant's ice cream bars were unfit for their ordinary purposes. *See id.* ¶¶ 102, 128–34. Cerretti does not argue, for example, that the ice cream bars were inedible. Plaintiff hasn't alleged that the defendant's goods weren't of merchantable quality. *See* 810 ILCS 5/2-314.

13

As discussed above, Cerretti hasn't shown that Whole Foods made a false statement to her. *See supra* 4–10. Plaintiff's negligent misrepresentation claim has another problem, too. The *Moorman* doctrine is Illinois's economic-loss rule, and it provides that "[a] plaintiff cannot recover for solely economic loss under the tort theories of strict liability, negligence and innocent misrepresentation." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 91 (1982). To recover for economic loss, a plaintiff must look to contract law instead. *Id.* at 86, 92. Economic loss includes "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Id.* at 82 (citations omitted).

The losses Cerretti alleges—the higher prices she paid because of Whole Foods's representations, [1] ¶¶ 106–08; *id.* at 19—are economic. *See Moorman*, 91 Ill.2d at 82. Cerretti argues that Whole Foods had an extra-contractual duty to provide honest information to her because the company vetted its products for quality and honest labeling and had special knowledge and experience. [15] at 21. Illinois law recognizes an exception to the economic loss rule that applies to professional malpractice claims when a defendant's work product is intangible. *See Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 156–65 (1994) (holding that accountants owed an extracontractual duty of reasonable professional competence); *Fireman's Fund. Ins. Co. v. SEC Donohue, Inc.*, 176 Ill.2d 160, 168–69 (1997) (declining to extend the professional malpractice exception to architects, because architectural plans and drawings were "incidental to a tangible

14

product"); *In re Michaels Stores Pin Pad Litig.*, 830 F.Supp.2d 518, 530 (N.D. Ill. 2011) (finding that the professional malpractice exception didn't apply to retailers selling products to plaintiffs). In this case, Whole Foods sold tangible products—ice cream bars—to Cerretti, the characteristics of those products were readily ascertainable, and the company owed no extracontractual duty. *See Congregation*, 159 Ill.2d at 163; *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567–68 (7th Cir. 2012).

Plaintiff hasn't shown that Whole Foods made a false statement of material fact or explained why she should be able to recover against the company in tort rather than contract for her economic losses. *See Kemper/Prime*, 487 F.3d at 1064; *Moorman*, 91 Ill.2d at 90–91. The negligent misrepresentation claim is dismissed.

### D. Unjust Enrichment

Unjust enrichment isn't a separate cause of action under Illinois law. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739–40 (7th Cir. 2019) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011)). Instead, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim" and will "stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (citation omitted). Because Cerretti's other claims have all been dismissed, her request for relief based on unjust enrichment fails as well. *See id.*; *Vanzant*, 934 F.3d at 740.[12]

---

[12] So too with Cerretti's request for injunctive relief. *See* [1] at 19. Injunctive relief is a remedy, not a cause of action. *See Knutson v. Vill. of Lakemoor*, 932 F.3d 572, 576 n.4 (7th Cir. 2019) (citing *Guardians Ass'n v. Civil Serv. Com'n*, 463 U.S. 582, 595 (1983)). Because

## IV. Conclusion

Whole Foods's motion to dismiss, [11], is granted. The claim for negligent misrepresentation is dismissed with prejudice.[13] Plaintiff's statutory and common-law fraud claims, the warranty claims, and her requests for unjust enrichment and injunctive relief are dismissed without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015). Plaintiff has leave to file an amended complaint by April 22, 2022. If an amended complaint is not filed, this dismissal will convert to a dismissal with prejudice and final judgment will be entered.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: April 8, 2022

---

Cerretti has no claims remaining for which she can seek injunctive relief as a remedy, her request is dismissed.

[13] Amendment of Cerretti's claim for negligent misrepresentation would be futile. That claim depends entirely on the flawed legal theory that a retailer owes an extra-contractual duty to a consumer. *See* [1] ¶¶ 135–140; [15] at 21. No additional facts or arguments will cure this legal defect, and so this claim is dismissed with prejudice. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) (alteration in original) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) ("While the federal courts 'should freely give leave [to amend a pleading] when justice so requires,' Rule 15(a)(2), a district court may deny leave for a variety of reasons, including undue delay and futility.").